1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   DONALD HOLLAND,                        No.  2:12-cv-1983 TLN AC

12              Plaintiff,

13       v.                                 ORDER

14   NAT'L UNION FIRE INS. CO. OF
     PITTSBURGH, ET AL.,
15
16              Defendants.

17          On October 30, 2013, the court held a hearing on plaintiff's October 9, 2013 motion to

18   quash.  Daniel Glass appeared for plaintiff.  Stephen Hayes appeared for defendant.  On review of

19   the parties' joint discovery statement and on hearing the arguments of counsel, THE COURT

20   FINDS AS FOLLOWS:

21                    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

22   A.     Plaintiff's Injury

23          Plaintiff is the former owner of a heating and air conditioning business.  On or about

24   October 19, 2010, plaintiff was installing a furnace unit in a new home, which required raising the

25   150-pound unit to the rafters of the house.  Plaintiff was standing on the rafters holding a rope

26   affixed to the top of the unit while his co-worker was on the first floor lifting the unit.  During this

27   time, plaintiff felt a pop and immediate pain in his back.  Plaintiff finished the job and went home

28   in pain.

                                                    1

1    Over the course of the next few days, plaintiff's pain persisted and his condition

2    worsened.  On October 22, 2010, plaintiff went to the Emergency Department of Marshall

3    Medical Center.  There, he was treated with an injection of morphine sulfate, which relieved his

4    symptoms temporarily.  Plaintiff did not get better, though, so later that day he went to Mercy

5    Hospital in Folsom, California. By that time, he lost feeling in his legs and could barely walk with

6    assistance.  The following day, he had back surgery, and the collapse of his vertebrae was

7    discovered.  Plaintiff emerged from surgery a paraplegic.  His condition is irreversible.

8    B.    Lawsuit for Medical Malpractice

9    Following his surgery, plaintiff sued the hospitals and physicians (presumably at both

10   Marshall Medical Center and Mercy Hospital) for medical malpractice.  That case was resolved

11   through agreement and a confidential settlement.  Plaintiff was represented in the medical

12   malpractice action by Steven H. Schultz of Demas & Rosenthal.  Robert B. Zaro of Zaro Sillis &

13   Ramazzini represented a portion of defendant medical providers.

14   C.    The LTD Policy

15   Plaintiff obtained a LTD policy from defendant National Union between June and

16   September 2010.  Per the terms of the policy, National Union provides coverage for certain losses

17   resulting from accidental injuries:

18   Injury means bodily injury: (1) which is sustained as a direct result
     of an unintended, unanticipated accident that is external to the body
19   and that occurs while the injured person's coverage under the
     Policy is in force; (2) which occurs while such person is
20   participating in a Covered Activity; and (3) which directly
     (independent of sickness, disease, mental incapacity, bodily
21   infirmity, or any other cause) causes a covered loss.

22   Specifically excluded are losses resulting from pre-existing conditions and/or medical

23   negligence:

24   No coverage shall be provided under this Policy and no payment
     shall be made for any loss resulting in whole or in part from, or
25   contributed to by, or as a natural consequence of any of the
     following excluded risks even if the proximate or precipitating
26   cause of the loss is an accidental bodily Injury. . . .

27   2. sickness, disease, mental incapacity or bodily infirmity whether
     the loss results directly or indirectly from any of these.

28

2

1

2      …

       10. the medical or surgical treatment of sickness, disease, mental

3      incapacity or bodily infirmity whether the loss results directly or
       indirectly from treatment.

4     D.     Plaintiff's Claim for LTD Benefits

5             After plaintiff became a paraplegic, he presented his claim to defendant and pursued it

6     over the course of a year.  On July 30, 2013, plaintiff filed this action for breach of insurance

7     contract and insurance bad faith.  During the course of this action, on May 20, 2013, National

8     Union formally denied plaintiff's claims for benefits on the ground that plaintiff's claim was not

9     accidental, but was instead related to degenerative spine disease.

10    E.     Defendant's Subpoenas

11            On October 2, 2013, National Union served subpoenas on Steven Shultz and Robert Zaro

12    pursuant to Federal Rule of Civil Procedure 45 for the production of certain non-privileged

13    documents and communications relating to plaintiff's underlying medical malpractice action.

14    The requests served on these attorneys are identical.

15    F.     Meet and Confer Efforts

16            The parties' meet and confer efforts are minimal: On October 4, 2013, plaintiff served

17    objections to the subpoenas on defendant, arguing that the requests are irrelevant.  On October 8,

18    2013, defendant responded by letter, arguing that the documents sought are relevant, that plaintiff

19    waived any privilege or privacy interest he had, and that plaintiff lacked standing.  Rather than

20    responding to defendant's letter, plaintiff filed this motion.  Thus, there has not been any

21    substantive discussion regarding the parties' respective positions.

22                                        LEGAL STANDARDS

23            "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any

24    party's claim or defense. . . .  Relevant information need not be admissible at the trial if the

25    discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Fed. R.

26    Civ. P. 26(b)(1).  Evidence is relevant if it has "any tendency to make the existence of any fact

27    that is of consequence to the determination of the action more probable or less probable than it

28    would be without the evidence."  Fed. R. Evid. 401.  The court must limit discovery when "the

                                                  3

1  burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P.

2  26(b)(2)(C)(iii).  The court may also limit the extent of discovery to protect a party or person

3  from annoyance, embarrassment, oppression, undue burden or other improper purposes. Fed. R.

4  Civ. P. 26(c)(1), 26(g)(1)(B)(ii).

5       "A party may, by oral questions, depose any person, including a party, without leave of

6  court except as provided in Rule 30(a)(2)," and "[t]he deponent's attendance may be compelled

7  by subpoena under Rule 45." Fed. R. Civ. P. 30(a)(1).  A nonparty may also be compelled to

8  produce documents and tangible things via a Rule 45 subpoena. Fed. R. Civ. P. 34(c).  Rule 45

9  permits a party to issue a "subpoena commanding the person to whom it is directed to attend and

10 give testimony or to produce and permit inspection of designated records or things." Fed. R. Civ.

11 P. 45(a)(1)(C).  The recipient may object to a subpoena, or move to quash or modify it.  Fed. R.

12 Civ. P. 45(c)(2), 45(c)(3).  "The district court has wide discretion in controlling discovery" and

13 "will not be overturned unless there is a clear abuse of discretion." Little v. City of Seattle, 863

14 F.2d 681, 685 (9th Cir. 1988).

15      "[T]he court that issued the subpoena . . . can entertain a motion to quash or modify a

16 subpoena." S.E.C. v. CMKM Diamonds, Inc., 656 F.3d 829, 832 (9th Cir. 2011).  The issuing

17 court *must* quash or modify a subpoena that:

18       (i) fails to allow a reasonable time to comply;

19       (ii) requires a person who is neither a party nor a party's officer to
20       travel more than 100 miles from where that person resides, is
         employed, or regularly transacts business in person-except that,
21       subject to Rule 45(c)(3)(B)(iii), the person may be commanded to
         attend a trial by traveling from any such place within the state
22       where the trial is held;

         (iii) requires disclosure of privileged or other protected matter, if no
23       exception or waiver applies; or

24       (iv) subjects a person to undue burden.

25 Fed. R. Civ. P. 45(c)(3)(A).

26      Additionally, the issuing court *may* quash or modify a subpoena if it requires:

27       (i) disclosing a trade secret or other confidential research,
         development, or commercial information;
28

4

1

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

2

3

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

4

5

Fed. R. Civ. P. 45(c)(3)(B).

6

DISCUSSION

7

Plaintiff moves to quash the subpoenas served on Steven Shultz and Robert Zaro on the

8

ground that the documents sought are irrelevant.  Plaintiff argues that there exists a legal question

9

regarding the interpretation of the policy to determine whether the medical malpractice exclusion

10

applies to this case at all.  In support of his motion, plaintiff attaches declarations submitted by

11

Steven Shultz and Robert Zaro.  See ECF Nos. 34-35.  Both Steven Shultz and Robert Zaro state

12

that they are submitting their declaration "in support of the Motion to Quash which I understand

13

is to be filed on behalf of Donald Holland."  Schultz Decl., ¶ 2; Zaro Decl. ¶ 2.

14

A.      Plaintiff's Standing to Quash the Subpoenas

15

Defendant argues first that plaintiff lacks standing to bring the instant motion because

16

only the subpoenaed non-party may move to quash.  The Ninth Circuit has yet to address the

17

question of whether a party may bring a motion to quash a subpoena served on a third party.  The

18

general consensus of other courts is that, while a motion to quash a subpoena is normally to be

19

made by the person or entity to which the subpoena is directed, an exception applies "where the

20

party seeking to challenge the subpoena has a personal right or privilege with respect to the

21

subject matter requested in the subpoena."  Smith v. Midland Brake, Inc., 162 F.R.D. 683, 685

22

(D. Kan. 1995); see also Brown v. Braddock, 595 F.2d 961, 967 (5th Cir. 1979); U.S. v. Gordon,

23

247 F.R.D. 509 (E.D.N.C. 2007); Kamalu v. Walmart Stores, Inc., 2013 WL 4403903, at *1 (E.D.

24

Cal. 2013); Durand v. Wal-Mart Associates, Inc., 2009 WL 2181258, at * 1 (S.D. Miss. July 22,

25

2009); In re REMEC, Inc. Securities Litigation, 2008 WL 2282647, at *1 (S.D. Cal. 2008).  See

26

also Schwarzer, Tashima, Wagstaffe, Fed. Civ. P. Before Trial § 11:2286.  Accordingly, plaintiff

27

////

28

////

1  may move to quash the subpoenas to the extent his personal rights or privileges are implicated.[1]

2      The court finds that plaintiff's privacy interest in his personal medical information, and

3  his interest in the confidentiality of the settlement proceedings in which he participated related to

4  the medical malpractice case, are sufficient to support standing to bring the motion.  The extent to

5  which plaintiff has standing to assert various privileges is a separate matter, discussed below.

6      Defendant argues that plaintiff lacks standing because he waived any privilege or privacy

7  interest in the documents sought by initiating this suit.  But the mere fact that the cause of

8  plaintiff's condition is at issue here does not automatically waive plaintiff's attorney-client

9  privilege, his interest in protecting the disclosure of attorney work-product, or his privacy interest

10 in the settlement negotiations / agreement.  At most, plaintiff's privacy interest *in his medical*

11 *records* may be deemed affected for the purposes of this litigation.

12 B.    Privilege

13     Plaintiff moves to quash the subpoenas on grounds they request materials protected by

14 attorney-client privilege and the work-product doctrine.  Plaintiff may assert these privileges only

15 as to the subpoena served on Steven Shultz, his attorney in the medical malpractice action.

16 Plaintiff never had an attorney-client relationship with Robert Zaro, defense counsel in the

17 medical malpractice action, and therefore cannot assert the privilege as grounds to quash the

18 subpoena directed to him.  Plaintiff also may not assert the attorney work-product doctrine for

19 someone who is not his representative.  See Fed. R. Civ. P. 26(b)(3); In re California Public

20 Utilities Com'n, 892 F.2d 778, 781 (9th Cir. 1989).  See also FTC v. Grolier, Inc., 462 U.S. 19,

21 25 (1983) (Rule 26(b)(3) "protects materials prepared for *any* litigation or trial as long as they

22 were prepared by or for a party to the subsequent litigation.") (emphasis in original).

23 Accordingly, the motion to quash on privilege grounds must be denied as to the Zaro subpoena.

24     The court turns to plaintiff's assertions of privilege vis-à-vis the Shultz subpoena.

25 ////

26

27 _____

[1] Though the option was available to him, plaintiff did not move for a protective order pursuant to
Federal Rule of Civil Procedure 26(c).  Schwarzer, Tashima, Wagstaffe, Fed. Civ. P. Before Trial
28 § 11:2286.

1.   <u>Attorney-Client Privilege</u>

Examination of the Shutlz subpoena reveals that the first two requests clearly and directly infringe on the attorney-client privilege:

> Request No. 1:  Any and all DOCUMENTS between YOU and PLAINTIFF, including but not limited to discussions of settlement negotiations.

> Request No. 2. Any and all COMMUNICATIONS between YOU and PLAINTIFF, including but not limited to discussions of settlement negotiations.

Defendant counters that the attorney-client privilege does not apply because the subpoena specifically excluded attorney-client communications (<u>see</u> Request Nos. 12-13, 15).  Defendant's attempt to characterize the information sought by Request Nos. 1 and 2 as not privileged is disingenuous.  Therefore, plaintiff's motion to quash the first two requests will be granted.

2.   <u>Work-Product Doctrine</u>

Next, the court turns to plaintiff's claim of attorney work-product protection.  Though plaintiff fails to cite to the specific requests that he asserts are protected under the doctrine and fails entirely to cite to any law in support of this position, it is apparent that the following requests are relevant to this discussion:

> Request No. 5. Any and all DOCUMENTS that constitute, refer, relate, or pertain to any experts YOU retained, including all reports and draft reports, in the MEDICAL MALPRACTICE ACTION.

> Request No. 6. Any and all COMMUNICATIONS that constitute, refer, relate, or pertain to any experts YOU retained, including all reports and draft reports, in the MEDICAL MALPRACTICE ACTION.

a.   <u>Experts Retained for Trial</u>

The Federal Rules of Civil Procedure address the disclosure of materials and communications related to expert witnesses who are retained for trial and those who are retained solely for trial preparation.  Initially, it is not clear to which experts defendant's subpoena is directed.

Regardless, pursuant to Federal Rule of Civil Procedure 26(b)(4)(B) and (C), in cases in

7

which an expert is retained for trial, his or her draft reports or disclosures and his or her

communications with a party's attorney are protected except in very limited circumstances:

> (B) Trial—Preparation Protection for Draft Reports or Disclosures. Rules 26(b)(3)(A) and (B) protect drafts of any report or disclosure required under Rule 26(a)(2), regardless of the form in which the draft is recorded.[2]

> (C) Trial—Preparation Protection for Communications Between a Party's Attorney and Expert Witnesses. Rules 26(b)(3)(A) and (B) protect communications between the party's attorney and any witness required to provide a report under Rule 26(a)(2)(B), regardless of the form of the communications, except to the extent that the communications:

>> (i) relate to compensation for the expert's study or testimony;

>> (ii) identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or

>> (iii) identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed.

The 1993 Advisory Committee Notes explain:

> The report is to disclose the data and other information considered by the expert and any exhibits or charts that summarize or support the expert's opinions. Given this obligation of disclosure, litigants should no longer be able to argue that materials furnished to their experts to be used in forming their opinions—whether or not ultimately relied upon by the expert—are privileged or otherwise protected from disclosure when such persons are testifying or being deposed.

Fed. R. Civ. P. 26(a)(2) Advisory Committee's note (1993 amendments).

In this case, plaintiff's motion is granted to the extent defendant seeks to discover draft reports or other disclosures and communications for those experts retained for trial, except that Steven Schultz must disclose (1) facts or data that the attorney provided and that the expert considered in forming the opinions to be expressed; or (2) the assumptions that the attorney

---

[2] These documents are protected from disclosure unless they are otherwise discoverable and "the party shows that it has a substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A). If they are ordered disclosed, they must be protected against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation. Id. 26(b)(3)(B).

provided and that the expert relied on in forming the opinions to be expressed.

                          b.      <u>Experts Retained for Trial Preparation</u>

As to experts who are retained solely for trial preparation (i.e., consulting experts), Federal Rule of Civil Procedure 26(b)(4)(D) limits the disclosure of reports and communications even more:

> (D) Expert Employed Only for Trial Preparation. Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial. But a party may do so only:
>
>     (i) as provided in Rule 35(b); or
>
>     (ii) on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means.

Here, since defendant has not shown exceptional circumstances to obtain these reports, it is only due to them as provided in Federal Rule of Civil Procedure 35(b).[3] Thus, plaintiff's motion is granted as to consulting experts.

C.     <u>Privacy Interest in Settlement Negotiations</u>

Lastly, plaintiff seeks to quash the subpoenas to the extent they seek information or communications related to the settlement of the medical malpractice action:

> Request No. 3. Any and all DOCUMENTS between YOU and DEFENDANTS, including but not limited to discussions of settlement negotiations.
>
> Request No. 4. Any and all COMMUNICATIONS between YOU and DEFENDANTS, including but not limited to discussions of settlement negotiations.
>
> Request No. 7. Any and all settlement agreements entered into between YOU and any party to the MEDICAL MALPRACTICE ACTION.

Federal Rule of Evidence 408 provides that evidence of conduct or statements made during settlement negotiations is "not admissible" when offered to prove liability; but such

---

[3] This Rule relates to an examiner's report for physical and mental examinations. <u>See</u> Fed. R. Civ. P. 35(b).

1  evidence maybe admitted when offered for other purposes, such as proving a witness's bias or

2  prejudice.  See Rhoades v. Avon Products, Inc., 504 F.3d 1151, 1161 (9th Cir. 2007).  Thus, it is

3  "plain that Congress chose to promote this goal [in Rule 408 to promote settlements] through

4  limits on the admissibility of settlement material rather than limits on their discoverability.  In

5  fact, the Rule on its face contemplates that settlement documents may be used for several

6  purposes at trial, making it unlikely that Congress anticipated that discovery into such documents

7  would be impermissible."  In re Subpoena Issued to Commodity Futures Trading Commission,

8  370 F. Supp. 2d 201, 211 (D.D.C. 2005) (emphasis in original).  Moreover, the Advisory

9  Committee Notes to Rule 408 contemplate the discovery of settlement materials, and warn

10  against using admissibility to prevent discovery: "evidence, such as documents, is not rendered

11  inadmissible merely because it is presented in the course of compromise negotiations if the

12  evidence is otherwise discoverable.  A party should not be able to immunize from admissibility

13  documents otherwise discoverable merely by offering them in a compromise negotiation." Fed. R.

14  Evid. 408, advisory committee's note.

15      Here, defendant's stated purpose of the discovery (generally) is as follows:

16          These documents and communications undoubtedly contain
            information relating to Holland's history of back issues, his
17          herniated disk and the ultimate cause of his paralysis.  This type of
            information is relevant to the issue of whether Holland's paralysis
18          is the result of an accidental injury independent of any disease or
            bodily infirmity such as degenerative disk disease.   It is also
19          relevant to the issue of whether Holland's injury was the result of
            medical negligence or a pre-existing condition – losses explicitly
20          excluded by the very policies upon which this action is based.

21  Discovery Stipulation 14, ECF No. 32.  This purpose does not fall under the prohibited uses listed

22  in Rule 408(a).  Furthermore, defendant does not argue that statements made during the

23  negotiations will be admissible for any of the reasons stated in Rule 408(b).

24      Accordingly, plaintiff's motion will be denied since there is no bar to the discoverability

25  of discussions and negotiations related to the settlement of the medical malpractice action.[4]

26  Moreover, "there is no federal privilege preventing the discovery of settlement agreements and

27  _____

28  [4] Whether the requests are relevant to the instant action is a question not currently before the
    court.

1  related documents." Board of Trustees of the Leland Stanford Junior Univ. v. Tyco Int'l Ltd., 253

2  F.R.D. 521, 523 (C.D. Cal. 2008); Matsushita Elec. Industrial Co. v. Mediatek, Inc., 2007 WL

3  963975, at *5 (N.D. Cal. 2007) ("[I]t is clear that when Congress approved Rule 408 to promote

4  settlements, it chose to do so by limiting admissibility – and not by limiting discovery.").  In light

5  of the confidential nature of the settlement agreement and absent any relevance objection by the

6  subpoenaed non-parties, these documents shall be produced pursuant to a protective order, to be

7  drafted by the parties and submitted to the court for review.

8  D.    Remaining Requests

9       The following requests are not before the court at this time because they do not implicate

10  plaintiff's privacy interest or any privileges: Request Nos. 8 (copies of deposition transcripts), 9

11  (copies of written discovery), 10 (copies of documents produced through subpoena), 11 (copies of

12  pleadings), 12 (copies of all correspondence), 13 (duplicative of Request No. 12), 14 (copies of

13  court transcripts), and 15 (copies of all communications not otherwise provided).

14       Plaintiff argues that the declarations of Steven Shultz and Robert Zaro in support of his

15  motion to quash constitute joinder, but he provides no authority for this proposition.  The court is

16  not inclined to expand the standing requirement for the filing of a motion to quash.

17       Accordingly, IT IS HEREBY ORDERED that plaintiff's October 9, 2013 motion to quash

18  subpoenas (ECF No. 31) is granted in part, as set forth more fully in this order.  Steven Shultz

19  shall produce documents in compliance with this order on or before November 15, 2013.

20  DATED: October 31, 2013

21  _____
   ALLISON CLAIRE
22  UNITED STATES MAGISTRATE JUDGE

23

24  /mb;holl1983.mtq

25

26

27

28

11