UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD HOLLAND,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,<br><br>　　　　Defendant. | No.  2:12-cv-1983-TLN-AC<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

　　　This matter is before the Court pursuant to Plaintiff Donald Holland's ("Plaintiff") Motion for Partial Summary Judgment (ECF No. 51) and Defendant National Union Fire Insurance Company of Pittsburgh, PA's ("Defendant") Cross-motion for Summary Judgment (ECF No. 53). For the reasons discussed below, the Court DENIES both Defendant's Motion for Summary Judgment and Plaintiff's Motion for Partial Summary Judgment.

　　**I.　　FACTUAL AND PROCEDURAL BACKGROUND**

　　　Plaintiff is a 49 year old man who owned and ran his own heating and air conditioning business starting in 1995. (Pl.'s SUF, ECF No. 48 at ¶ 1.)[1]  In June, 2010, Plaintiff's business bank, U.S. Bank, solicited him for blanket accident insurance policies. (ECF No. 48 at ¶ 2.) On

---

[1] Because Defendant only disputes one of Plaintiff's facts, the Court references Plaintiff's Statement of Undisputed Facts for much of the factual background section of this order.

1

1  June 29, 2010, Plaintiff completed the request for insurance provided to him by U.S. Bank. (ECF
2  No. 48 at ¶ 3.) The policies did not require a formal application or physical examination. (ECF
3  No. 48 at ¶ 3.)
4     The application did not include questions concerning Plaintiff's health, existing medical
5  conditions, or age. (ECF No. 48 at ¶ 3.) Plaintiff states that at the time of application and up
6  until he was involved in an accident, Plaintiff believed he was in excellent health. (ECF No. 48 at
7  ¶ 4.) He frequently worked 40 or more hours per week in a strenuous occupation and had been
8  doing the same work for more than 15 years. (ECF No. 48 at ¶ 4.) During this time, Plaintiff
9  states that he "never experienced any significant back, neck or muscle problems which caused
10 him to be unable to work in his occupation for any significant amount of time." (ECF No. 48 at ¶
11 4.)
12    Over the week of July 4, 2010, Plaintiff along with his 22 year old son and his fiancée
13 (now wife) helped his fiancée's daughter move to San Diego to attend college. (ECF No. 48 at ¶
14 5.) They rented a U-Haul truck and loaded it with personal items and heavy furniture. (ECF No.
15 48 at ¶ 5.) They drove to San Diego. He and his son unloaded furniture and moved a heavy
16 couch up to a second floor apartment. (ECF No. 48 at ¶ 5.) They had to carry this couch up stairs
17 as it did not fit in the residence elevator. (ECF No. 48 at ¶ 5.) Within a day or so, they drove
18 back to Sacramento. (ECF No. 48 at ¶ 5.) Travel each way took about ten hours. (ECF No. 48 at
19 ¶ 5.) Upon returning to Sacramento, Plaintiff experienced some back pain and at the urging of his
20 fiancée, went to see his primary care physician on July 8, 2010. (ECF No. 48 at ¶ 6.)
21    Plaintiff's medical records from the examination of July 8, 2010, indicated that he had
22 neither any "sign of atrophy or weakness of either upper or lower extremities" nor "skeletal
23 tenderness or deformity." (ECF No. 48 at ¶ 7.) He was given a "lab slip for blood test." (ECF
24 No. 48 at ¶ 7.) Plaintiff's diagnosis was "Lumbar back sprain." (ECF No. 48 at ¶ 7.) The
25 doctor's notes specifically indicate: "PT SAID HE DOES NOT NEED ANY MEDS FOR HIS
26 BACK AT THIS POINT." (ECF No. 48 at ¶ 7.) Plaintiff states that his back pain resolved on its
27 own a few days after the doctor's appointment, and that he was able to return to work without
28

1  incident. (ECF No. 48 at ¶ 8.)

2      On October 19, 2010, Plaintiff and Jeff Balibrera (a contractor in the heating and air

3  conditioning business) went to the Sagittarius job site[2] and began the general layout and

4  installation. (ECF No. 48 ¶ 14.) At the end of the day on October 20, 2010, Plaintiff and Mr.

5  Balibrera installed a 152 pound furnace. (ECF No. 48 ¶ 17.) Plaintiff and Mr. Balibrera moved

6  the furnace vertically up into the rafters of the home. (ECF No. 48 ¶ 20.) Once in the rafters they

7  moved it near the pedestal. (ECF No. 48 ¶ 20.) It was at this time that Plaintiff moved the unit to

8  his side by performing a twisting motion while holding the 152 pound furnace and felt a terrible

9  pain in his back. (ECF No. 48 ¶ 20.) Plaintiff described the pain as immediate and excruciating.

10  (ECF No. 48 ¶ 21.) Plaintiff was able to drive himself home but remained in pain that night.

11  (ECF No. 48 ¶ 21.) On October 21, 2010, Plaintiff returned to the job site but was unable to

12  perform any "meaningful" work activity due to his pain. (ECF No. 48 ¶ 22.) He spent most of

13  the day lying on the cement floor at the job site. (ECF No. 48 ¶ 22.) On October 22, 2010,

14  Plaintiff's fiancée brought him to Marshall Hospital Emergency Department for treatment. (ECF

15  No. 48 ¶ 23.) At first an Emergency Department nurse told Plaintiff he may have a kidney stone

16  but after examination Plaintiff was informed that he had sciatica. (ECF No. 48 ¶ 24.) Plaintiff

17  was given IV medication and eventually released. (ECF No. 48 ¶ 24.) After just a few hours

18  Plaintiff experienced even more pain resulting in a 911 call. (ECF No. 48 ¶ 25.) The paramedics

19  assisted Plaintiff down the stairs since he could no longer ambulate. (ECF No. 48 ¶ 25.) On

20  October 23, 2010, an MRI was performed on Plaintiff, and he was informed that he needed

21  emergency back surgery. (ECF No. 48 ¶ 27.) Following surgery, Plaintiff became paraplegic.

22  (ECF No. 48 ¶ 47.)

23      In the Spring of 2011, Plaintiff provided proper notice of his insurance claim to Defendant

24  when he discovered that he had a claim which would be covered under Defendant's policies of

25  insurance. (ECF No. 2 ¶ 14). Defendant's agent then sent Plaintiff several claim forms which

26  Plaintiff completed and returned. (ECF No. 2 ¶ 15). When Plaintiff did not receive any

---

[2] The Sagittarius job was to install the ductwork and heating and air conditioning systems on a new construction project for Dr. Dennis Moore on Sagittarius Road in Placerville, California. (ECF No. 48 ¶ 11.)

substantive responses from Defendant, Plaintiff and his counsel sent multiple letters and facsimiles to Defendant. (ECF No. 2 ¶ 16). Defendant still has not provided any substantive responses to Plaintiff's requests for information on the processing of his claims. (ECF No. 2 ¶ 16).

Plaintiff initiated this case on July 30, 2012, alleging breach of an implied covenant of good faith and fair dealing, as well as breach of the insurance contracts with Plaintiff. (Complaint, ECF No. 2.) On March 3, 2014, Plaintiff filed the instant Motion for Partial Summary Judgment requesting that judgment be entered in his favor on his Second Claim for Relief for breach of contract. (ECF No. 51.) On April 3, 2014, Defendant responded by filing a Cross Motion for Summary Judgment. (ECF No. 53).

## II. STANDARD OF LAW: SUMMARY JUDGMENT

Summary judgment is appropriate when the moving party demonstrates no genuine issue as to any material fact exists, and therefore, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." Id. at 324 (internal quotations omitted). Indeed, summary judgment should be entered against a party who does not make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 322. If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus.*

*Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585−87 (1986); *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288−289 (1968).

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 251−52.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank*, 391 U.S. at 288−89. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with any applicable affidavits. Fed. R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305−06 (9th Cir. 1982). The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. *Anderson*, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244−45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987). Finally, to demonstrate a genuine issue that necessitates a jury trial, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material

facts." *Matsushita,* 475 U.S. at 586. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* at 587.

### III.  ANALYSIS

Defendant claims in its Motion for Summary Judgment that no benefits are due under the policies for two reasons: (1) Plaintiff has not and cannot meet his burden to prove his claim falls under the coverage of the policies, and (2) judicial estoppel precludes plaintiff from bringing this current claim. (ECF No. 54 at 19.)

In Plaintiff's Motion for Partial Summary Judgment he requests that the Court finds as a matter of law that Plaintiff is entitled to permanent disability benefits under the insurance policies and that Defendant breached its contracts of insurance by failing to pay benefits under these policies. (ECF No. 47 at 20).

*A.  Breach of Contract Claim*

In his Complaint, Plaintiff brings a claim for relief against Defendant for breach of contract. (ECF No. 2.) Plaintiff asserts that Defendant failed to comply with the contents of the insurance contracts by failing to pay Plaintiff's claims promptly. (ECF No. 2.)

Plaintiff had two policies of Blanket Accident Insurance as of October 24, 2010. (ECF No. 48 ¶ 30.) The policies provide a Permanent Total Disability Benefit which is a Lump Sum Benefit payable as follows: "If, as a result of an Injury, the Insured Person is rendered Permanently Totally Disabled within 90 days of the accident that caused the Injury...." (ECF No. 48 ¶ 32.) The policies define "Permanently Totally Disabled" as where "you have suffered…(a) loss of both hands or feet; or…(e) paraplegia…." (ECF No. 48 ¶ 33.) Plaintiff's injury is paraplegia and it is irreversible (ECF No. 56 ¶ 38); therefore his injury falls within the definition of Permanently Totally Disabled. Thus, the matter before this Court is whether Plaintiff's disability is the result of an injury as defined by the policies.

The policies define injury as:

"bodily injury: (1) which is sustained as a direct result of an unintended, unanticipated accident that is external to the body and that occurs while the injured person's coverage under the Policy is in force; (2) which occurs while such person

is participating in a Covered Activity; and (3) which directly (independent of sickness, disease, mental incapacity, bodily infirmity or any other cause) causes a covered loss."

(ECF No. 48 ¶ 34.)

There is no real dispute regarding the second element of the bodily injury definition since Plaintiff was engaged in a Covered Activity when the injury occurred. (ECF No. 56 ¶ 36.) Elements one and three require a deeper analysis.

  i.  <u>Element One- Accident external to the body</u>

Element one of the definition is an unintended, unanticipated accident that is external to the body and that occurs while the injured person's coverage under the Policy is in force. (ECF No. 48 ¶ 34.) The Court will address the various subparts of this element in turn.

First, no one disputes that the incident occurred while Plaintiff's coverage under the policy was in force. Therefore, this portion of the element is met.

As for the term accident, the California Supreme Court has defined an accident as an event which manifests "itself at an identifiable time" and "which caused identifiable harm at the time it occurred." *Geddes & Smith, Inc. v. St. Paul Mercury Indemnity Co.*, 51 Cal. 2d 558, 564 (1959). In *Richards v. Travelers' Ins. Co.*, the court stated "that 'accident' must be given its popular meaning; that is, a casualty--something out of the usual course of events, and which happens suddenly and unexpectedly, and without any design on the part of the person injured." *Richards v. Travelers Ins. Co.,* 89 Cal. 170, 175 (1891). *See also*, *Zuckerman v. Underwriters at Lloyd's, London*, 42 Cal.2d 460 (1954). On October 20, 2010, Plaintiff experienced terrible pain when he performed a twisting motion while holding and moving a 152 pound furnace. (Resp. to Pl.'s SUF, ECF No. 56 ¶ 20.) The pain began immediately. Plaintiff can pinpoint an identifiable time as being when he made the twisting motion. Furthermore, there was an identifiable harm. Plaintiff told his co-worker Mr. Balibrera about his back pain as it occurred. (ECF No. 56 ¶ 21.) Furthermore, the injury here was out of the usual course of events; Plaintiff has installed more than 100 furnace units throughout his career and has never experienced such pain. (ECF No. 56 ¶ 41.) Although Defendant argues that Plaintiff's installation of the furnace was a routine activity,

the Court concludes that the holding and twisting motion was not within the usual course of events.

In Defendant's Motion for Summary Judgment, Defendant argues that there was no accident in the present case and relies on *Alessandro v. Massachusetts Casualty Ins. Co.* in doing so. Defendant claims that *Alessandro* is dispositive and has nearly identical facts to the present case. (ECF No. 54 at 9.) The Court disagrees. In *Alessandro*, the plaintiff was engaged in repairing a refrigerator when the pain occurred. *Alessandro v. Massachusetts Casualty Ins. Co.*, 232 Cal.App.2d 203, 206 (1965). He was not lifting anything at the time, but rather he was bent forward in an awkward position. *Id*. When he straightened up, he experienced pain radiating from his back to his left leg. *Id*. In *Alessandro* the court held that there was no "evidence of falling, slipping, overexertion or of any external force striking the body of the appellant. He was doing his usual work, in a usual way…" *Alessandro*, 232 Cal.App.2d at 208. On the contrary, in the present case there is evidence of overexertion. Plaintiff was holding a 152 pound furnace and twisting when he experienced the terrible back pain. (ECF No. 56 ¶ 20.) This was more than just an awkward position, but rather overexertion from lifting a heavy object and twisting. Therefore, the *Alessandro* holding does not apply here.

Furthermore, the overexertion here was external to the body. Plaintiff did not have any pain on October 19, 2010, when he began working at the Saggittarius jobsite, nor did he experience any pain even in the few moments leading up to the twisting motion. It was at the exact time that he held and twisted the furnace (the time of overexertion) that he felt the terrible pain. (ECF No. 56 ¶ 20.) This pain caused Plaintiff to visit the hospital and ultimately led to emergency back surgery, from which he emerged with lower extremity paraplegia. (ECF No. 56 ¶ 29.) Therefore, Plaintiff has alleged sufficient evidence to allow a jury to find that the first element is met and that the injury was the result of an unintended, unanticipated accident external to the body.

///

///

    ii.  <u>Element three- Causation</u>

As for the final element, the accident must have "directly (independent of sickness, disease, mental incapacity, bodily infirmity or any other cause) cause[d] a covered loss." (ECF No. 56 ¶ 34.) Defendant argues that it was not Plaintiff's alleged work injury that caused the need for surgery or the resulting paralysis but rather Plaintiff's severe degenerative changes in his spine. (ECF No. 54 at 15). Defendant relies on Dr. Topper's conclusions that Plaintiff's paraplegia "is completely related to medical illness," and more specifically "severe and progressive spine disease." (ECF No. 60, Ex. 19.) In contrast, Plaintiff is contending that the cause of his paraplegia was his lifting the 152 pound furnace on October 20, 2010. (ECF No. 56 ¶ 39.) As a result of these two competing arguments, there exists an issue of material fact as to which medical explanation is the cause of the injury. Thus, summary judgment is inappropriate.

The Court's finding above is supported by the Efficient Proximate Cause Doctrine that Plaintiff sets forth in his Motion for Partial Summary Judgment. (ECF No. 47.) In *Brooks v. Metropolitan Life Ins. Co.*, the court sets forth this doctrine and holds:

> "that the presence of preexisting disease or infirmity will not relieve the insurer from liability if the accident is the proximate cause of death; and that recovery may be had even though a diseased or infirm condition appears to actually contribute to cause the death if the accident sets in progress the chain of events leading directly to death, or if it is the prime or moving cause."

*Brooks v. Metropolitan Life Ins. Co.*, 27 Cal.2d 305, 309 (1945). The California Supreme Court defined "proximate efficient cause" as both "the one that sets others in motion" and as "the predominating or moving efficient cause." *Sabella v. Wisler*, 59 Cal.2d 21, 32 (1963).

The Ninth Circuit has asserted that the determination of proximate efficient cause is generally a question of fact for the jury unless the facts are undisputed. *Berry v. Commercial Union Ins. Co.*, 87 F.3d 387, 393 n.8 (1996). Here, there remains a factual dispute as to the causation of Plaintiff's injury and ultimate paraplegia. Therefore, the Court is unable to make this decision as a matter of law and thus must deny Plaintiff's Motion for Partial Summary Judgment.

9

*B. Judicial Estoppel*

Defendant argues that Plaintiff is asserting inconsistent legal theories in separate lawsuits. (ECF No. 54 at 12.) Defendant claims that Plaintiff alleges in his medical malpractice lawsuit that his paralysis was caused by healthcare providers (ECF No. 54 at 14) and that he is now taking a contrary position in this present complaint by contending that the paralysis was caused by his October 20, 2010 injury. Defendant argues that it should prevail on its Motion for Summary Judgment because judicial estoppel precludes Plaintiff from asserting these incompatible legal theories in separate lawsuits. (ECF No. 54.) However, Plaintiff did not plead inconsistent theories as explained below.

Defendant claims that Plaintiff alleges in his medical malpractice lawsuit that his paralysis was caused by the negligent treatment of his health care providers. (ECF No. 54.) Defendant has misstated Plaintiff's allegations. In Plaintiff's complaint for medical negligence Plaintiff states:

> On or about October 22, 2010, and thereafter, plaintiff Donald Holland's healthcare providers failed to timely and properly diagnose, care for and/or treat his spinal cord injury; disc herniation; spinal cord compression and/or neurological deficit, by failing to timely identify; diagnose; radiologically evaluate; do radiological evaluation at the proper level of the spine and/or treat his condition until it was too late, all of which resulted in Donald Holland being rendered a paraplegic, which was preventable had timely and proper (non-negligent) care and treatment been given.

(ECF No. 60-3, Ex. 23 ¶ 6.) Plaintiff is alleging that the healthcare providers failed to treat his spinal cord injury and that the initial cause of the pain was this injury. His injury originated from the October 20, 2010, event resulting in him being unable to ambulate on his own afterwards. As indicated, this injury existed before any medical treatment commenced. Although Plaintiff contends that the healthcare providers could have prevented him from becoming paraplegic with proper treatment, this does not equate to stating that the healthcare providers caused his paraplegia. Therefore, Defendant's judicial estoppel argument fails.

### IV. CONCLUSION

The parties continue to dispute the causation of Plaintiff's paraplegia. This element is pivotal in determining whether Plaintiff should have recovered under the insurance policy. Therefore, it is a matter of credibility and the Court cannot make this decision as a matter of law. Both Defendant's Motion for Summary Judgment and Plaintiff's Motion for Partial Summary Judgment are DENIED.

IT IS SO ORDERED.

Dated: December 3, 2014

Troy L. Nunley
United States District Judge