1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11   DONALD HOLLAND,                          No.  2:12-CV-01983 TLN AC

12              Plaintiff,

13        v.                                   **ORDER DENYING DEFENDANT'S**
                                               **MOTION FOR RECONSIDERATION**
14   NATIONAL UNION FIRE INSURANCE
     COMPANY OF PITTSBURGH, PA,
15
                Defendant.
16

17        This matter is before the Court pursuant to Defendant National Union Fire Insurance

18   Company of Pittsburgh, PA's ("Defendant") Motion for Reconsideration.  (ECF No. 80.)

19   Plaintiff Donald Holland ("Plaintiff") has filed an opposition (ECF No. 81) to which Defendant

20   has replied (ECF No. 82).  The Court has carefully considered the briefing filed by the parties and

21   for the reasons set forth below hereby DENIES Defendant's motion.

22        I.      FACTUAL BACKGROUND

23        Plaintiff is a 49 year old man who owned and ran his own heating and air conditioning

24   business starting in 1995.  (Pl.'s SUF, ECF No. 48 at ¶ 1.)  In June, 2010, Plaintiff's business

25   bank, U.S. Bank, solicited him for Blanket Accident Insurance policies.  (ECF No. 48 at ¶ 2.)  On

26   June 29, 2010, Plaintiff completed the request for insurance provided to him by U.S. Bank.  (ECF

27   No. 48 at ¶ 3.)  The policies did not require a formal application or physical examination.

28        The application did not include questions concerning Plaintiff's health, existing medical

1

1  conditions, or age.  (ECF No. 48 at ¶ 3.)  Plaintiff states that at the time of application and up

2  until he was involved in an accident, Plaintiff believed he was in excellent health.  (ECF No. 48 at

3  ¶ 4.)  He frequently worked 40 or more hours per week in a strenuous occupation and had been

4  doing the same work for more than 15 years.  (ECF No. 48 at ¶ 4.)  During this time, Plaintiff

5  states that he "never experienced any significant back, neck or muscle problems which caused

6  him to be unable to work in his occupation for any significant amount of time."  (ECF No. 48 at ¶

7  4.)

8        Over the week of July 4, 2010, Plaintiff, his 22 year old son, and Plaintiff's fiancé at the

9  time (now wife) helped his fiancé's daughter move to San Diego to attend college.  (ECF No. 48

10  at ¶ 5.)  They rented a U-Haul truck and loaded it with personal items and heavy furniture.  (ECF

11  No. 48 at ¶ 5.)  They drove to San Diego.  He and his son unloaded furniture and moved a heavy

12  couch up to a second floor apartment.  (ECF No. 48 at ¶ 5.)  They had to carry this couch upstairs

13  as it did not fit in the residence elevator.  (ECF No. 48 at ¶ 5.)  Within a day or so, they drove

14  back to Sacramento.  (ECF No. 48 at ¶ 5.)  Travel each way took about ten hours.  (ECF No. 48 at

15  ¶ 5.)  Upon returning to Sacramento, Plaintiff experienced some back pain and at the urging of his

16  fiancé went to see his primary care physician on July 8, 2010.  (ECF No. 48 at ¶ 6.)

17        Plaintiff's medical records from the examination of July 8, 2010, indicated that he had "no

18  sign of atrophy or weakness of either upper or lower extremities."  (ECF No. 48 at ¶ 7.)  He had

19  "no skeletal tenderness or deformity."  (ECF No. 48 at ¶ 7.)   He was given a "lab slip for blood

20  test."  (ECF No. 48 at ¶ 7.)  The doctor's notes specifically indicate: "PT SAID HE DOES NOT

21  NEED ANY MEDS FOR HIS BACK AT THIS POINT."  (ECF No. 48 at ¶ 7.)  Plaintiff's

22  diagnosis was "Lumbar back sprain."  (ECF No. 48 at ¶ 7.)  Plaintiff states that his back pain

23  resolved on its own a few days after the doctor's appointment, and that he was able to return to

24  work without incident until his October 2010 accident.  (ECF No. 48 at ¶ 8.)

25        On October 19, 2010, Plaintiff and Jeff Balibrera (a contractor in the heating and air

26  conditioning business) went to the Sagittarius job site[1] and began the general layout and

27

28  [1]     The Sagittarius job was to install the ductwork and heating and air conditioning systems on a new
construction project for Dr. Dennis Moore on Sagittarius Road in Placerville, California.  (ECF No. 48 ¶ 11.)

installation.  (ECF No. 48 ¶ 14.)  At the end of the day on October 20, 2010, Plaintiff and Mr.

Balibrera installed a 152 pound furnace.  (ECF No. 48 ¶ 17.)  Plaintiff and Mr. Balibrera moved

the furnace vertically up into the rafters of the home.  (ECF No. 48 ¶ 20.)  Once in the rafters they

moved it near the pedestal.  (ECF No. 48 ¶ 20.)  It was at this time that Plaintiff moved the unit to

his side by performing a twisting motion while holding the 152 pound furnace and felt a terrible

pain in his back.  (ECF No. 48 ¶ 20.)  Plaintiff described the pain as immediate and excruciating.

(ECF No. 48 ¶ 21.)  Plaintiff was able to drive himself home but remained in pain that night.

(ECF No. 48 ¶ 21.)  On October 21, 2010, Plaintiff returned to the job site but was unable to

perform any "meaningful" work activity due to his pain.  (ECF No. 48 ¶ 22.)  He spent most of

the day lying on the cement floor at the job site.  (ECF No. 48 ¶ 22.)  On October 22, 2010,

Plaintiff's fiancée brought him to Marshall Hospital Emergency Department for treatment.  (ECF

No. 48 ¶ 23.)  At first an Emergency Department nurse told Plaintiff he may have a kidney stone

but after examination Plaintiff was informed that he had sciatica.  (ECF No. 48 ¶ 24.)  Plaintiff

was given IV medication and eventually released.  (ECF No. 48 ¶ 24.)  After just a few hours

Plaintiff experienced even more pain resulting in a 911 call.  (ECF No. 48 ¶ 25.)  The paramedics

assisted Plaintiff down the stairs since he could no longer ambulate.  (ECF No. 48 ¶ 25.)  On

October 23, 2010, an MRI was performed on Plaintiff, and he was informed that he needed

emergency back surgery.  (ECF No. 48 ¶ 27.)  Following surgery, Plaintiff became paraplegic.

(ECF No. 48 ¶ 47.)

　　　　In the Spring of 2011, Plaintiff provided proper notice of his insurance claim to

Defendant.  (ECF No. 2 ¶ 14).  Defendant's agent then sent Plaintiff several claim forms which

Plaintiff completed and returned.  (ECF No. 2 ¶ 15).  When Plaintiff did not receive any

substantive responses from Defendant, Plaintiff and his counsel sent multiple letters and

facsimiles to Defendant.  (ECF No. 2 ¶ 16).  Plaintiff alleges that Defendant still has not provided

any substantive responses to Plaintiff's requests for information on the processing of his claims.

(ECF No. 2 ¶ 16).

　　　　Plaintiff filed a negligence action against his healthcare professionals in March 2011.

(ECF No. 55.)  That case was not before this Court, but settled pursuant to a confidential

settlement agreement.  (ECF No. 55.)  Plaintiff initiated the instant case on July 30, 2012, alleging breach of an implied covenant of good faith and fair dealing, as well as breach of the insurance contract with Plaintiff.  (Complaint, ECF No. 2.)  On March 3, 2014, Plaintiff filed a motion for partial summary judgment requesting that judgment be entered in his favor on his Second Claim for Relief for breach of contract.  (ECF No. 51.)  On April 3, 2014, Defendant responded by filing a Cross Motion for Summary Judgment.  (ECF No. 53.)  On December 4, 2014, this Court issued an order denying both parties' motions for summary judgment.  (ECF No. 72.)  Defendant filed the instant motion for reconsideration nine months later, on September 3, 2015.  (ECF No. 80.)

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 60(b) ("Rule 60") governs Defendant's motion for reconsideration and states as follows:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

Therefore, for relief to be afforded, Defendant must meet one of Rule 60(b)'s criteria for relief.

## III.    ANALYSIS

Defendant's Notice of Motion contends that it is seeking reconsideration of three issues: (1) The court's denial of its summary judgment with regard to the medical malpractice exclusion; (2) the denial of its summary judgment with regard to whether Plaintiff's injury was the result of an "accident"; and (3) the court's purported failure to decide that there can be no claim for bad

4

1  faith and punitive damages.  (ECF No. 80 at 2.)  At the outset, the Court notes that none of the

2  reasons for Defendant's motion meets the requirements set forth by Rule 60.  However, the Court

3  addresses each contention separately below.

4       A.  <u>Medical Malpractice Exclusion</u>

5       Defendant asserts that this Court committed clear error because the Court determined that

6  the cause of Plaintiff's original injury was a question of fact, whereas "the only relevant question

7  was whether negligent medical treatment proximately caused or contributed to [P]laintiff's

8  'complete and irreversible paralysis,' i.e. the medical condition required to trigger coverage."

9  (Def.'s Mem of P&A, ECF No. 80-1 at 6.)  Defendant's interpretation of the Court's previous

10  order misses the point.  The Court's order explained that there is a question of fact as to whether

11  the injury (Plaintiff's paraplegia) was caused by the medical treatment / failure to treat Plaintiff as

12  opposed to the accident with the furnace.  There is a question as to whether Plaintiff's paraplegia

13  was caused by a degenerative disease or by the accident.  In the event that it was caused by the

14  accident, the Court must at this juncture allow for the possibility that even had medical

15  professionals effectively done everything in their power to treat Plaintiff, that Plaintiff's

16  paraplegia was unpreventable.  In other words, it is not clear to the Court as to whether anything

17  could have been done by healthcare providers to prevent Plaintiff's paraplegia.  Defendant's

18  motion does not account for this possibility.  Instead, Defendant seems to rely on an assumption

19  that Plaintiff's medical treatment at least contributed to Plaintiff's injury.  Although such an

20  assumption is reasonable, it is an assumption of a material fact, and the Court is unable to make

21  such a determination without a finder of fact.  *See generally Simo v. Union of Needletrades*, 322

22  F.3d 602, 610 (9th Cir. 2003) ("Summary judgment is improper if 'there are any genuine factual

23  issues that properly can be resolved only by a finder of fact because they may reasonably be

24  resolved in favor of either party.'") (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250

25  (1986)).  In the event that Defendant intends to argue that any involvement with a medical

26  professional contributes to an injury thus invoking its exemption clause, such an interpretation

27  would be absurd and in contravention to the purpose of the policy.  *See Roden v.*

28  *AmerisourceBergen Corp.*, 186 Cal. App. 4th 620, 651–52 (2010) ("[Courts] must interpret a

1    contract in a manner that is reasonable and does not lead to an absurd result."); *see also Balsam v.*

2    *Tucows Inc.*, 627 F.3d 1158, 1162 (9th Cir. 2010) (applying *Roden*).

3        Defendant also asserts that Plaintiff is judicially estopped from asserting that healthcare

4    professionals were not responsible for his injuries under the doctrine of judicial estoppel because

5    of Plaintiff's previous suit against his healthcare providers.  (ECF No. 80-1 at 3–4.)  "Where a

6    party assumes a certain position in a legal proceeding, and **succeeds in maintaining that**

7    **position**, he may not thereafter, simply because his interests have changed, assume a contrary

8    position, especially if it be to the prejudice of the party who has acquiesced in the position

9    formerly taken by him."  *Davis v. Wakelee*, 156 U.S. 680, 689 (1895) (internal quotations

10    omitted) (emphasis added).  The courts have articulated several factors used to inform a court as

11    to whether to apply this doctrine:

12
13
14
15
16
17
18
19
20
21
22
23
24
         First, a party's later position must be "clearly inconsistent" with its earlier position.  *United States v. Hook*, 195 F.3d 299, 306 (7th Cir. 1999); *In re Coastal Plains, Inc.*, 179 F.3d 197, 206 (5th Cir. 1999); *Hossaini v. Western Mo. Medical Center*, 140 F.3d 1140, 1143 (8th Cir. 1998); *Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 98 (2d Cir. 1997).  Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or the second court was misled,"  *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 599 (6th Cir. 1982).   Absent success in a prior proceeding, a party's later inconsistent position introduces no "risk of inconsistent court determinations,"  *United States v. C.I.T. Constr. Inc.*, 944 F.2d 253, 259 (5th Cir. 1991), and thus poses little threat to judicial integrity.  *See Hook*, 195 F.3d. at 306; *Maharaj*, 128 F.3d. at 98; *Konstantinidis*, 626 F.2d. at 939. A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.  *See Davis*, 156 U.S., at 689, 15 S.Ct. 555; *Philadelphia, W., & B.R. Co. v. Howard*, 13 How. 307, 335–37, 14 L.Ed. 157 (1851); *Scarano v. Central Rail C. N.J.*, 203 F.2d. 510, 513 (3d Cir. 1953) (judicial estoppel forbids use of "intentional self-contradiction ... as a means of obtaining unfair advantage"); *see also* 18 Wright § 4477, p. 782.

25    *New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001).  The Court finds the second factor—that

26    the party to be estopped must have convinced the first court to adopt its position—to be lacking.

27        Here, Defendant is seeking to employ judicial estoppel in a situation where the parties

28    executed a sealed settlement.  There was no determination made by the court.  *See City of*

*Kingsport v. Steel & Roof Structure, Inc.*, 500 F.2d 617, 620 (6th Cir. 1974) (success in prior proceeding necessary); *Hook*, 195 F.3d at 306 ("the party to be estopped must have convinced the first court to adopt its position"). Moreover, as discussed in this Court's previous order, the Ninth Circuit has found that inconsistent factual allegations are proper. *See Molsbergen v. United States*, 757 F.2d 1016, 1018–19 (9th Cir. 1985).[2] Thus, the Court finds no error in its previous order denying Defendant's motion for summary judgment.

B. Plaintiff's Accident

Defendant next avers that California case law does not support a finding that an accident occurred. In support, Defendant cites *Alessandro v. Massachusetts Casualty Ins. Co.*, 232 Cal. App. 2d 203 (1965) and *Williams v. Hartford Accident & Indemnity Co.*, 158 Cal. App. 3d 229 (1984). (ECF No. 80-1 at 10–11.) The Court addresses each of these cases in turn.

Defendant argues that this Court's "reasoning was erroneously premised on misinterpretation of dicta in Alessandro." (ECF No. 80-1 at 12.) The *Alessandro* court defined an accident as:

> a casualty-something out of the usual course of events and which happens suddenly and unexpectedly and without design of the person injured. (*Rock v. Travelers Ins. Co.*, 172 Cal. 462, 465 [156 P. 1029, L.R.A.1916E 1196]; *Richards v. Travelers Ins. Co.*, 89 Cal. 170, 175 [26 P. 762, 23 Am. St. Rep. 455].)' (*Zuckerman v. Underwriters at Lloyd's*, 42 Cal.2d 460, 473 [267 P.2d 777].) It ' "includes any event which takes place without the foresight or expectation of the person acted upon or affected by the event." ' (*Richards v. Travelers Ins. Co.*, 89 Cal. 170, 176 [26 P. 762, 23 Am. St. Rep. 455]; *see also Ritchie v. Anchor Casualty Co.*, 135 Cal. App. 2d 245, 252–253 [286 P.2d 1000]; *Moore v. Fidelity & Cas. Co.*, 140 Cal. App. 2d Supp. 967, 971 [295 P.2d 154].)

*Id.* at 208. The crux of Defendant's argument is that like in *Alessandro,* no "unexpected event"

---

[2]     "Pursuant to Rule 8(e)(2), '[a] party may set forth two or more statements of a claim or defense alternatively or hypothetically." The Rule further provides that "[a] party may also state as many separate claims or defenses as he has regardless of consistency." *Id.* Clearly, a policy which permits one claim to be invoked as an admission against an alternative or inconsistent claim would significantly restrict, if not eliminate, the freedom to plead inconsistent claims provided by Rule 8(e)(2). Thus, courts have been reluctant to permit one pleading to be read as a judicial or evidentiary admission against an alternative or inconsistent pleading. *See Douglas Equipment, Inc. v. Mack Trucks, Inc.*, 471 F.2d 222 (7th Cir. 1972); *Continental Insurance Co. v. Sherman*, 439 F.2d 1294 (5th Cir. 1971); *Giannone v. United States Steel Corp.*, 238 F.2d 544 (3d Cir. 1956); McCormick, Evidence § 265 (2nd ed. 1972). *Cf. Ryan v. Foster and Marshall*, 556 F.2d 460, 463 (9th Cir. 1977) (plaintiffs' assertion of inconsistent and alternative claims may not be construed as a waiver by plaintiffs of their rights to recovery under either claim)."

1    occurred.

2         The facts in *Alessandro* are as follows: Plaintiff was an owner and operator of a business

3    which repaired and maintained all types of refrigeration and air conditioning equipment. *Id.* at

4    205–06. This necessitated the replacement of worn or burned-out parts, reconditioning old parts,

5    repairing leaks, recharging with gas, replacement of motors, and incidental related duties. *Id.* at

6    206. On the day in question the appellant was engaged in repairing a refrigerator walk-in box

7    which was sunken about one foot in the ground. *Id.* Sitting on a ledge formed by the ground, it

8    was necessary to bend forward in an awkward position to replace a control. *Id.* "He was not

9    doing any lifting at the time, nor was he struck on the back in any way, nor did he experience any

10   external force on any part of his body." *Id.* When he tried to straighten up he felt as though his

11   body from the waist down was paralyzed and experienced pain radiating from his back to the left

12   leg. *Id.*

13        The court ultimately made the determination that an accident had not occurred because

14   nothing outside "the usual course of events" happened "suddenly and unexpectedly without any

15   design of the [plaintiff] except the result, that is, the fact that the [plaintiff] could not immediately

16   straighten up and was subsequently disabled." *Id.* at 209.

17        In this Court's previous order, the Court distinguished the facts in the instant case from

18   those in *Alesandro* stating that

19              In *Alessandro*, . . . [the plaintiff] was not lifting anything at the
                time, but rather he was bent forward in an awkward position. *Id.*
20              When he straightened up, he experienced pain radiating from his
                back to his left leg. *Id.* In *Alessandro*, the court held that there was
21              no "evidence of falling, slipping, overexertion or of any external
                force striking the body of the appellant. He was doing his usual
22              work, in a usual way…" *Alessandro*, 232 Cal. App. 2d at 208. On
                the contrary, in the present case there is evidence of overexertion.
23              Plaintiff was holding a 152 pound furnace and twisting when he
                experienced the terrible back pain. (ECF No. 56 ¶ 20.) This was
24              more than just an awkward position, but rather overexertion from
                lifting a heavy object and twisting. Therefore, the *Alessandro*
25              holding does not apply here.

26   (ECF No. 72 at 8.) Defendant misconstrues this Court's order and argues that the Court made its

27   determination based on whether an external force caused the accident. Again, Defendant misses

28

8

the point.[3]  The Court's order simply articulated that an external force, or in this case

overexertion, can indicate that an unexpected event occurred and that the evidence here would

allow a jury to find that an unexpected event occurred and caused Plaintiff's injury.  Thus, the

Court does not find that *Alessandro* bars Plaintiff's claim.

In *Williams*, the following events occurred:

> While seated at the desk in his law office, [appellant] observed a round circle in the field of vision of his right eye.  When he pressed the small of his finger against his eyelid the spot disappeared. Believing his eyelashes were sticking, he trimmed them. Five days later he had difficulty wearing his contact lenses because of eye irritation.  The following morning, May 30th, he awoke at approximately 4:45 a.m. and observed a pie-shaped portion taken out of the lower center section of the field of vision of his right eye. Since he was not in pain, he decided to take his routine, two-mile jog and call his eye doctor after he got to his law office. Appellant's jog went as always.  He experienced no pain, nor did he observe any change in the obstruction in the field of vision of his right eye.  He did not fall, bump into anyone, or even stop suddenly. He traveled over the same jogging path he typically traveled.

> Later the same morning, appellant was diagnosed as having a detached retina and was hospitalized. On June 2, 1978, he had an eight-hour surgery to correct the condition. Several days later his eye hemorrhaged, and a second corrective surgery took place on August 21 or 22, 1978. On September 28, 1978, he was told for the first time that the surgery had not been successful and that he would never regain any sight in his right eye.

*Williams*, 158 Cal. App. 3d at 230–31.  The court found that an "accident" under appellant's

insurance policy had not occurred because the facts of the case concerned "a series of

imperceptible events that finally culminated in a single tangible harm" and not . . . a specific

event or a series of specific events each of which manifested itself at an identifiable time and each

of which caused identifiable harm."  *Id.* at 234 (internal quotations omitted).  Here, there is an

issue of material fact as to whether Plaintiff's injury was caused by a degenerative disease or

---

[3]     The Court notes that Defendant asserts that the Court relied on dicta within the *Alessandro* opinion. However, this argument is not well taken in light of California's Second District Court of Appeal's treatment of *Alessandro's* holding.  *See Williams v. Hartford Accident & Indem. Co.*, 158 Cal. App. 3d 229, 234 (1984) ("So, it is manifest that in *Alessandro* there was absent any 'evidence of falling, slipping, overexertion, or of any external force striking the body of the appellant. ... There was nothing outside "the usual course of events" which happened "suddenly and unexpectedly without any design of the" appellant (Rock v. Travelers' Ins. Co., 172 Cal. 462, 465 ...) except the result, ....' ( *Alessandro v. Massachusetts Cas. Ins. Co.*, *supra.*, 232 Cal. App. 2d 203, 209.)").

9

1   while twisting the furnace he was attempting to install.  If the injury was caused by the former,

2   then the injury would not be recoverable under the policy.  However, the Court cannot decide this

3   matter without a finder of fact and thus summary judgment as to this matter is inappropriate.  *See*

4   *generally Simo v. Union of Needletrades*, 322 F.3d 602, 610 (9th Cir. 2003).  Therefore, the

5   Court's ruling that as to Defendant's summary judgment claim is not erroneous.

6         C.   Bad Faith and Punitive Damages

7         Finally, Defendant argues that the Court should dismiss Plaintiff's prayer for bad faith and

8   punitive damages because there is a "genuine dispute over coverage, entitling National Union at a

9   minimum to partial summary judgment of this cause of action."  (ECF No. 80-1 at 14.)  In

10   response, Plaintiff asserts that Defendant intentionally failed to "investigate what factually

11   occurred, but instead embarked on a course of conduct to manufacture evidence to support its

12   denial by getting further reports from Dr. Topper."  (ECF No. 81 at 13.)  Plaintiff asserts that

13   "National Union had the opportunity to ask him any questions about the injury and paraplegia,"

14   and "purposely did not ask the single question needed to understand coverage: Whether Mr.

15   Holland would be paraplegic had he not lifted that furnace."  (ECF No. 81 at 13(citing Ex. J to the

16   Supp. Dec. of Daniel S. Glass, Langley Dep. at 124:25–125:3).)

17         Although the Court's previous order did not explicitly state that the Court could not make

18   a determination as to whether Plaintiff's request for bad faith and punitive damages was

19   recoverable, these prayers for relief stem from Plaintiff's breach of good faith and fair dealing

20   claim.  Thus, it naturally flowed that since the order stated that material issues of fact remained as

21   to Plaintiff's breach of good faith and fair dealing claim, a determination as to the availability of

22   bad faith and punitive damages was inappropriate.  However, in light of Defendant's motion for

23   reconsideration and in an effort to clarify this Court's previous ruling, the Court offers the

24   following reasoning:

25         Plaintiff has alleged an element of bad faith, specifically that Defendant has not attempted

26   "in good faith to reasonably investigate, evaluate and to effectuate a prompt, fair and equitable

27   settlement of plaintiff's claim after liability had become absolutely clear."  (ECF No. 2. at ¶

28   22(d).)  Courts have found bad faith in situations where the insurer has made only a "perfunctory

1    investigation" regardless of whether there is a genuine dispute to coverage.  *See Wilson v. 21st*

2    *Century Ins. Co.*, 42 Cal. 4th 713, 723 (2007), *as modified* (Dec. 19, 2007) (" The genuine dispute

3    rule does not relieve an insurer from its obligation to thoroughly and fairly investigate, process

4    and evaluate the insured's claim.  A genuine dispute exists only where the insurer's position is

5    maintained in good faith and on reasonable grounds."); *Mariscal v. Old Republic Life Ins. Co.*, 42

6    Cal. App. 4th 1617, 1624 (1996), *as modified* (Mar. 29, 1996) (An insurer has a "duty to

7    thoroughly investigate the circumstances to determine whether the accident was a factor causing

8    his death."); *Egan v. Mut. of Omaha Ins. Co.*, 24 Cal. 3d 809, 818–19 (1979) ("When the insurer

9    unreasonably and in bad faith withholds payment of the claim of its insured, it is subject to

10   liability in tort.  For the insurer to fulfill its obligation not to impair the right of the insured to

11   receive the benefits of the agreement, it again must give at least as much consideration to the

12   latter's interests as it does to its own."); *see also Progressive W. Ins. Co. v. Tiscareno*, No. 08-

13   CV-180 W (CAB), 2010 WL 3063276, at *5 (S.D. Cal. Aug. 3, 2010) (finding that summary

14   judgment was not appropriate as to a bad faith claim involving an insurer where there was a

15   material issue of fact as the insurer's reasonableness in delaying payments).

16          Here, there are allegations that Defendant did not adequately investigate whether

17   Plaintiff's condition was caused by his lifting of the 152 lb. furnace.  (ECF No. 62 at 14.)  In fact,

18   Plaintiff asserts that Defendant failed to even interview Plaintiff or the witness to the accident and

19   instead solely relied on their expert to disclaim coverage.  (ECF No. 62 at 14.)  Therefore, there is

20   a genuine dispute as to whether Defendant fulfilled its obligation to Plaintiff.  *See*

21   *Frommoethelydo v. Fire Ins. Exch.*, 42 Cal. 3d 208, 220 (1986) (finding a breach where the

22   insurer was advised of the existence of witnesses who had observed the equipment in plaintiff's

23   house, and the insurer failed to investigate).  Because Plaintiff has demonstrated that genuine

24   issues of material fact exist regarding Defendant's reasonableness, summary judgment is not

25   appropriate.  *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct.

26   2548, 91 L.Ed.2d 265 (1986).

27          Similarly, Defendant fails to show that the Court should have granted summary judgment

28   as to Plaintiff's prayer for punitive damages.  Civil Code section 3294 provides: "In an action for

1    the breach of an obligation not arising from contract, where the defendant has been guilty of

2    oppression, fraud, or malice, express or implied, the plaintiff, in addition to the actual damages,

3    may recover damages for the sake of example and by way of punishing the defendant." *Egan v.*

4    *Mut. of Omaha Ins. Co.*, 24 Cal. 3d 809, 819 (1979).  The special relationship between the insurer

5    and the insured illustrates the public policy considerations that support exemplary damages in

6    such cases.  *Id.*  This relationship is inherently unbalanced due to the adhesive nature of insurance

7    contracts which place the insurer in a superior bargaining position.  *See Jonathan Neil &*

8    *Associates, Inc. v. Jones*, 33 Cal. 4th 917, 937 (2004), *as modified* (Oct. 20, 2004) ("In the area of

9    insurance contracts the covenant of good faith and fair dealing has taken on a particular

10   significance, in part because of the special relationship between the insurer and the insured.").

11   Thus, the California Supreme Court has found that the availability of punitive damages is

12   compatible with the recognition of insurers' underlying public obligations and reflects an attempt

13   to restore balance in the contractual relationship.  *Egan*, 24 Cal. 3d at 820.

14          In *Hughes v. Blue Cross of Northern Calif.*, 215 Cal. 3d 832, 847 (1989), the First District

15   California Court of Appeals upheld a punitive damages award where "there was evidence that the

16   denial of respondent's claim was not simply the unfortunate result of poor judgment but the

17   product of the fragmentary medical records, a cursory review of the records, the consultant's

18   disclaimer of any obligation to investigate, the use of a standard of medical necessity at variance

19   with community standards, and the uninformative follow-up letters sent to the treating

20   physicians."  Here, aside from Plaintiff's allegation that Defendant failed to investigate, Plaintiff

21   has also alleged that Defendant has engaged in widespread and prolific marketing of "blanket

22   accident" policies that they have no intention of paying disability benefits under.  Plaintiff alleges

23   that Defendant has a number of improper practices and violations that have been cited by

24   insurance regulators, including but not limited to:  delays and errors in processing claims; product

25   limitations not explained clearly; failure to use properly licensed people to sell insurance

26   products; and failure to fulfill and administer policies after sale.[4]  (Ex. K, ECF No. 63.)  Based on

27   ───────────────
     [4]      The Court anticipates that Defendant will oppose the admittance of evidence regarding Defendant's past
28   conduct concerning such policies, arguing that any policies other than the instant policy and Plaintiff are irrelevant
     and highly prejudicial.  The Order in no way indicates whether the Court will allow such evidence at trial.  The Court

1  such allegations, the Court finds that summary judgment as to Plaintiff's prayer for punitive

2  damages would be inappropriate at this juncture.

3      **IV.    CONCLUSION**

4          For the foregoing reasons, Defendant's motion for reconsideration (ECF No. 80) is hereby

5  **DENIED**.  Defendant has requested in the alternative that this Court grant certification for

6  interlocutory appeal, under 28 U.S.C. § 1292(b).  As this matter is scheduled for trial in

7  September 2016, the Court finds that it would be inefficient to delay this matter any further.

8  Thus, the Court will allow Defendant to appeal, but will not stay this case during the pendency.

9          **IT IS SO ORDERED**.

10

11  Dated: April 11, 2016

12

13                                                Troy L. Nunley
                                                  United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  declines to make any determinations at this time as such matters are appropriate for motions in limine.